# Exhibit 2

USWGO
ALLY OF QANON // DRAIN THE SWAMP



UNITED STATE DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA

Exhibit in attachment to "COMPLAINT AND REQUEST FOR INJUNCTION"
New Federal Lawsuit – Social Security Act

"Brian David Hill v. Glen Andrew Hall, et al."

*Receipt : 20000001225*

*Page 1 of 1*

**COURT ADDRESS:**
**55 W. CHURCH ST. P.O. BOX 1206**
**MARTINSVILLE, VA 24114-1206**
**PHONE # :276-403-5106**



**OFFICIAL RECEIPT**
**MARTINSVILLE CIRCUIT COURT**
**CIVIL**

**DATE :** 03/16/2020     **TIME :** 12:43:09        **CASE # :** 690CL2000008900

**RECEIPT # :** 20000001225    **TRANSACTION # :** 20031600006

**CASHIER :** BEW      **REGISTER # :** E719        **FILING TYPE :** PET       **PAYMENT :** FULL PAYMENT

**CASE COMMENTS :** COMMONWEALTH OF VIRGINIA v. HILL, BRIAN DAVID

**SUIT AMOUNT :** $0.00

**ACCOUNT OF :** COMMONWEALTH OF VIRGINIA

**PAID BY :** COMMONWEALTH OF VIRGINIA

**CREDIT/DEBIT CARD :** $99.84

**DESCRIPTION 1 :** WCN:WRIT OF CORAM NOBIS

       **2 :** PLAINTIFF: COMMONWEALTH OF VIRGINIA

       **3 :** NO HEARING SCHEDULED

| ACCOUNT CODE | DESCRIPTION | PAID | ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|---|---|---|
| 049 | WRIT TAX (CIVIL) | $5.00 | 206 | SHERIFF FEES | $12.00 |
| 106 | TECHNOLOGY TRST FND | $5.00 | 219 | LAW LIBRARY | $2.00 |
| 123 | LEGAL AID SERVICES | $9.00 | 229 | COURTHOUSE MAINTENANCE FEE (CHMF) | $2.00 |
| 147 | INDIGENT ASSISTANCE (INA) | $1.00 | 304 | CIVIL FILING FEE (LAW & EQUITY) | $50.00 |
| 170 | COURT TECHNOLOGY FUND | $10.00 | 407 | CONVENIENCE FEE | $3.84 |

**TENDERED : $**    99.84

**AMOUNT PAID : $**    99.84

PAYOR'S COPY        *CLERK OF COURT : ASHBY R. PRITCHETT*        RECEIPT COPY 1 OF 3

VIRGINIA: IN THE CIRCUIT COURT OF THE CITY/TOWN OF MARTINSVILLE

|  |  |  |
|---|---|---|
| **COMMONWEALTH OF VIRGINIA,**<br>**Plaintiff,** | ) ) ) ) | **Criminal Action No. CR19000009-00** |
| v. | ) ) | |
| **BRIAN DAVID HILL,**<br>**Defendant,** | ) ) ) | **Motion for writ of error coram vobis** |
|  | ) ) | |

*Brian's Copy | Clerk Stamp?*

## Motion for writ of error coram vobis

Pursuit to § 8.01-677 and the inherit power of a Court to correct clerical

errors, errors of fact and correct any frauds upon the Court ("*These powers are*

*"governed not by rule or statute, but by the control necessarily vested in courts to*

*manage their own affairs so as to achieve the orderly and expeditious disposition*

*of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-631 (1962)." Chambers v.*

Nasco, Inc., 501 U.S. 32, 43 (1991)), Brian David Hill ("Petitioner") the criminal

defendant in this case files this motion for writ of error coram vobis in this Circuit

Court to correct the errors and frauds perpetuated on this Court and the General

District Court.

This motion is to either correct the final judgment in the Circuit Court on

November 15, 2019, and/or in the General District Court on December 21, 2018,

1

for wrongfully convicting an "actually innocent" man Brian David Hill. There is

not enough evidence to have ever convicted Petitioner on December 21, 2018, of

indecent exposure, and thus was a nullity from the very beginning.

Petitioner files evidence that shows that the Commonwealth of Virginia had

lied about the facts of the case in regards to what they filed in the Court of Appeals

of Virginia, opposition brief filed on 02-24-2020, under CAV #0128-20-3. That is

a fraud upon the Court, a final judgment of presumed guilt procured by fraud. One

fact was that the police were never able to locate the guy wearing the hoodie. An

Exhibit will be introduced in attachment showing that the Martinsville Police

Department refused to open an envelope full of evidence (See **Exhibit 1**) that

would have likely changed the course of investigation with the threatening greeting

card and the carbon monoxide cumulative evidence. Instead of investigating the

evidence, the envelope was kept sealed and transferred to the Commonwealth's

Attorney Glen Andrew Hall and then was secretly transferred again to Matthew

Scott Thomas Clark who never informed Petitioner that he received the envelope

that was meant for Martinsville Police Department, that the Police Department

ignored the evidence and refused to investigate any evidence. Such incompetence

and dereliction of duty by a so-called professional law enforcement agency. Such

malpractice and not following investigative standards of investigating potential

crimes when evidence is mailed to a Police Department but never opened and

2

never looked at but simply disregarded while its contents never reviewed. That disproves Glen Andrew Hall's claim of the facts that the guy wearing the hoodie cannot be located by the Martinsville Police, because the Police Department is so incompetent that they refused to even open the envelope with evidence meant for Officer Robert Jones after the Police Chief was to be given the envelope and the Commonwealth's Attorney refused to open the envelope (See **Exhibit 1**). They charged Petitioner so quickly with indecent exposure, that it created a legal process that absolved any ability for Martinsville Police Department to even thoroughly investigate the so-called guy wearing the hoodie that Petitioner had reported to Officer Robert Jones. The legal process of the Commonwealth Attorney and the ineffective defense counsel caused the Police Department to refuse to investigate any evidence ever mailed or faxed by Brian David Hill. So if Brian ever received a death threat in the future, the Police will refuse to investigate it and give it over to his lawyer breaking the chain of custody. How incompetent for a law enforcement agency to refuse to investigate evidence. Who would have believed that the Police could not locate a guy wearing a hoodie if they won't even open an envelope full of evidence mailed to them under restricted delivery of certified mail??????????????? That is a good question that this Honorable Court needs to ask of Robert Jones the officer and Glen Andrew Hall the lawyer.

3

Even Scott Albrecht did not introduce any case law in the General District

Court and no court appointed lawyer in the Circuit Court or General District Court

had ever brought up these arguments of spoliation of evidence and lack of

investigation by Martinsville Police and that new evidence, until this motion was

filed by Petitioner.

Neighbors v. Commonwealth, 274 Va. 503, 505 (Va. 2007) ("10. The circuit

court's restriction of Code § 16.1-106 to only monetary cases in the case at bar was

erroneous. There is no restriction to an appeal of a petition for a writ of error coram

vobis from the general district court to the circuit court because it is a non-

monetary civil proceeding. Accordingly, the appeal of the denial of a writ of coram

vobis is within the jurisdiction of a circuit court under Code § 17.1-513 and the

circuit court erred in determining it lacked jurisdiction to hear the appeal from the

judgment of the general district court.")

Neighbors v. Commonwealth, 274 Va. 503, 504 (Va. 2007) ("1. The writ of

error coram vobis, or coram nobis, is an ancient writ of the common law. It was

called coram nobis (before us) in King's Bench because the king was supposed to

preside in person in that court. It was called coram vobis (before you — the king's

justices) in Common Pleas, where the king was not supposed to reside. The

difference related only to the form appropriate to each court and the distinction

disappeared in this country when the need for it ended. 2. The principal function of

4

the writ is to afford to the court in which an action was tried an opportunity to

correct its own record with reference to a vital fact not known when the judgment

was rendered, and which could not have been presented by a motion for a new

trial, appeal or other existing statutory proceeding. It lies for an error of fact not

apparent on the record, not attributable to the applicant's negligence, and which if

known by the court would have prevented rendition of the judgment. 3. The writ of

coram vobis does not lie for newly-discovered evidence or newly-arising facts, or

facts adjudicated on the trial. It is not available where advantage could have been

taken of the alleged error at the trial, as where the facts complained of were known

before or at the trial, or where at the trial the accused or his attorney knew of the

existence of such facts but failed to present them.")

## NEW FACTS THAT WERE NOT PRESENTED BY ANY COURT
## APPOINTED COUNSEL TO THE GENERAL DISTRICT COURT

The General District Court erred as a matter of law in finding that Petitioner

was guilty of Virginia Code § 18.2-387. Indecent exposure.

The facts that were not presented at the General District Court are as

follows:

1. That Petitioner was a victim of carbon monoxide gas in his

    Apartment. Expert witness Pete Compton made a written statement, of

5

ACE Chimney Sweep in Bassett, VA. That was not known at the time

Petitioner was convicted for indecent exposure in General District

Court on December 21, 2018. It was in 2019 that Petitioner was

finally given evidence of carbon monoxide gas in his home. See

**Exhibit 2**.

2. That Petitioner had mailed an envelope (See **Exhibit 1**) with evidence

to the Police Chief of Martinsville where the letter inside with the

evidence was meant for Officer Robert Jones as new evidence for him

to investigate regarding the threatening greeting card directed at

Brian's mother Roberta Hill which would add credibility to Brian's

claim of taking his clothes off in public to protect his mother from

being killed. The evidence also shows that cumulatively there was

carbon monoxide gas in Petitioner's home before and after Petitioner

was arrested, and such gas also affected Petitioner's mother as well.

The Police would have had at least two witnesses not including expert

witness Pete Compton. That would validate Petitioner's claims and

create a good reason or excuse as to why Petitioner was naked at night

on the Dick and Willie walking trail, a story that Officer Robert Jones

would have accepted had Petitioner or even the Hospital had known.

However the Martinsville Police Chief was incompetent as well as

6

Robert Jones as neither of them was ever interested in opening up the

envelope to look through the evidence and contact Petitioner and his

family to interview all of them to be questioned about the very

evidence that Petitioner had mailed, and also allow Pete Compton to

be questioned by law enforcement which would documented the

evidence and would have made the Martinsville Police felt that

Petitioner had NO intent to commit indecent exposure and thus was

legally innocent all along under Virginia Law. No crime had been

committed under actus reus unless the Petitioner has done the act

without any justification, excuse, or other defense. However Virginia

does not appear to have established a clean definition of criminal

intent, but Black's Law Dictionary defines it as "[a]n intent to commit

an actus reus without any justification, excuse, or other defense." See

**Exhibit 1**.

3. At the General District Court during the bench trial on December 21,

2018, The Commonwealth did not prove intent to being obscene as

required by statute. In summary, in order to show that Petitioner had

violated the indecent exposure statute under Virginia law, the

Commonwealth was required to prove, among other things, that

Petitioner had the intent to display or expose himself in a way which

7

has, as its dominant theme or purpose, appeal to the prurient interest in sex, as further defined above, without any justification, excuse, or other defense.[1] The Commonwealth failed to do so. Rather, the Commonwealth's evidence, presented through its own witnesses, showed Petitioner as someone who was running around naked with socks and shoes (not boots) between midnight and 3:00 a.m. and taking pictures of himself because he believed that someone was going to hurt his family if he did not do so. The General District Court did not hear, however, any evidence of Petitioner having his dominant theme, or purpose being an appeal to the prurient interest in sex. For example, there was no evidence of Petitioner making any sexual remarks, being aroused, masturbating, or enjoying his conduct, sexually or otherwise. If a person was purposing to expose himself in public because he or she found it sexually arousing, it would be logical that he or she would pick a place and time where he or she would expect to encounter lots of members of the public. Petitioner did not do that. Rather, he was running around between midnight and

---

[1] For the reasons stated above, the Commonwealth's burden was to prove every element of the offense, including the mens rea, beyond a reasonable doubt. However, even if, arguendo, this Court were to find that the Commonwealth's burden was only a preponderance of the evidence, the Commonwealth has still failed to carry its burden.

3:00 a.m. and the witnesses to his nudity were few. Hence, the statements Petitioner made to police and his conduct both indicate that, in the light most favorable to the Commonwealth, he was naked in public at night while having a psychiatric episode, but without the intent necessary to commit indecent exposure under Virginia law. Consequently, the General District Court erred, as a matter of law, when it found that Petitioner had committed the Virginia state law offense of indecent exposure as per Virginia Code § 18.2-387. While the evidence may show that Petitioner was naked in public, as stated above, nudity, without more, is not obscene under Virginia law. Rather, "[t]he word `obscene' where it appears in this article shall mean that which, considered as a whole, has as its dominant theme or purpose an appeal to the prurient interest in sex, that is a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse, and which goes substantially beyond customary limits of candor in description or representation of such matters and which, taken as a whole, does not have serious literary, artistic, political or scientific value." Va. Code § 18.2-372 (emphasis added). The mere exposure of a naked body is not obscene. See Price v. Commonwealth, 201 S.E.2d

798, 800 (Va. 1974) (finding that `[a] portrayal of nudity is not, as a matter of law, a sufficient basis for finding that [it] is obscene')."

Romick v. Commonwealth, No. 1580-12-4, 2013 WL 6094240, at *2 (Va. Ct. App. Nov. 19, 2013)(unpublished)(internal citations reformatted).

4.  New Evidence that the General District Court did not see was that Sovah Hospital had laboratory tests ordered for alcohol, drug, and blood count testing which would have found any evidence of any drugs, substances, or even gases that would have explained why Petitioner was even naked in a public place at nighttime which endangered himself being naked on a hiking trail at night while wild animals including black bears and coyotes could have easily been around the area. Petitioner had a backpack but no evidence of any diabetic supplies and no glucose, which is dangerous to a Type 1 diabetic. He could have died of low blood sugar before the Police had even found him. He endangered himself not a member of the public. However they discharged Petitioner to jail and the laboratory tests were to be deleted from his medical record chart (See Pg. 19 of **Exhibit 3)**, the blood vials thrown away which is spoliation of evidence when that very such evidence would have been in

10

Petitioner's favor in this criminal case. Permanently depriving Petitioner of a fair trial especially if it were a jury trial as all they would hear about was how he was naked which would make them feel emotionally uncomfortable over even looking at the photographs. The spoliation of evidence prevents Petitioner from ever being allowed to prove the levels of carbon monoxide poisoning that Petitioner was under while he was naked and after he was handcuffed and taken to the Hospital by ambulance. The medical records proves that Petitioner had abnormally high resting blood pulse (BP: 100+) on September 21, 2018, which is Sinus Tachycardia. Petitioner also had Sinus Tachycardia on November, 2017, when Petitioner was injured and taken to the hospital, Sinus Tachycardia and abnormally high White Blood Cell count which is common in victims of carbon monoxide gas poisoning. The levels could have been proven, the lab tests could have been disseminated to Martinsville Police Department, and Petitioner likely never would have even been charged or the charge would have been dismissed quickly not to embarrass the Commonwealth Attorney. That never happened because Scott Albrecht never faxed, never emailed, and never filed any "litigation hold" letter asking the Hospital not to throw away any blood sample

11

taken from Petitioner until it is thoroughly examined by a state laboratory or an independent laboratory that such accreditation is legally accepted in Virginia Courts. The Spoliation of exculpatory evidence does still prove one thing, that the Commonwealth Attorney cannot argue that there was no substances or gasses in Petitioner's body when he was found butt naked on a hiking trail at night by Officer Robert Jones of Martinsville Police Department. That right there is still a "reasonable doubt" since the levels of carbon monoxide can never be established, and thus Petitioner could have and should have been found not guilty of indecent exposure under a reasonable doubt being established. Unless Petitioner was medically cleared of any and all substances, drugs, narcotics, gases, any of them, Petitioner does have the right to raise reasonable doubt as to intent to commit indecent exposure in a public place at night. Without proving intent, the Commonwealth does not have a case for a criminal conviction and never had a case of a successfully sustainable conviction. The General District Court never should have convicted Petitioner on December 21, 2018.

Petitioner was never supposed to be convicted by the General District Court. Scott Albrecht failed to produce any of these relevant and persuasive case laws and

12

there was evidence that could never have been made known to him until 2019

when Pete Compton discovered the carbon monoxide gas for Petitioner's and his

mother's home address. Petitioner was in jail not on bond throughout the General

District Court case so he could not assist his attorney in any of the preparation for

the trial on December 21, 2018, and neither could Petitioner assist his attorney in

gathering any evidence since jail is oppressive and a lockdown facility, then he

was transferred to the custody of the United States Marshals shortly afterwards

after the General District Court decision. All Petitioner knew about was appeal the

decision not knowing what the Commonwealth would do pushing for a jury trial in

the Circuit Court knowing possibly that evidence of spoiliated (spoliation of

evidence), knowing that the cards would unfairly be stacked against Petitioner with

counsel already making excuses after Scott Albrecht moved away from

Martinsville and was replaced with the ineffective and defective of a lawyer

Lauren McGarry and then Matthew Clark which both just wanted to make excuses

to persuade Brian and his whole family for Brian to withdraw appeal. Petitioner

was deprived of a fair trial throughout the state case every step of the way which is

a nullity when due process is deprived to a party in a case. A null and void

conviction, a null and void/voidable judgment.

It is clear that Petitioner should never have been convicted of indecent

exposure and that counsel was ineffective and Petitioner was unable to properly

assist counsel due to being in Martinsville City Jail. That jail has no law library which violates the United States Supreme Court case law precedent.

"The Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to 'adequate, effective, and meaningful' access to the courts." Petrick v. Maynard, 11 F.3d 991, 994 (10th Cir.1993) (quoting Bounds v. Smith, 430 U.S. 817, 822 (1977)).

The guarantee of court access is satisfied "by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828.

The Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to "adequate, effective, and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); Green v. Johnson, 977 F.2d 1383, 1389 (10th Cir.1992). We impose "affirmative obligations" on the states to assure all inmates access to the courts and assistance in the preparation and filing of legal papers. Ramos v. Lamm, 639 F.2d 559, 583 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

With Scott Albrecht being ineffective and the Martinsville City Jail having absolutely no law library, Petitioner could not prove his legal innocence in the

14

General District Court. Then when Petitioner was able to be released on bond conditions for the Circuit Court, Petitioner was further given ineffective counsel making excuses and begging Petitioner to withdraw appeal and not adopting any of his filed pro se motions that were ignored in the Circuit Court. Petitioner was never going to have a fair trial under that level of ineffectiveness. The only good thing was that since Petitioner was not in jail, he was able to fax or hand deliver pro se motions which helps to demonstrate on the record in this criminal case that counsel was ineffective, defective, and not doing anything to even create a defense which is malpractice. Scott Albrecht was the best of them all but even he was ineffective counsel as well since Scott never pushed for evidence to not be destroyed by simply mailing or faxing a litigation hold letter and never cited case law for the criteria for successful convictions and/or acquittals for indecent exposure charges.

## ARGUMENT

The Commonwealth has failed to meet the burden of proof that Petitioner is guilty of Virginia Code § 18.2-387, in the General District Court. The Commonwealth does not have any absolute fact as to the levels of carbon monoxide gas poisoning due to the spoliation of evidence of the blood samples obtained at the Hospital on Sept. 21, 2018, and thus the Commonwealth cannot sustain any fact or claim that they can ever assert that they feel that Petitioner was not under any substance, narcotic, drug, or gas poisoning at the time that Petitioner

was naked on the Dick and Willie hiking trail. Thus such spoliation of evidence at fault of both the Commonwealth Attorney and Scott Albrecht by not filing any litigation hold letters with Sovah Hospital, requesting that they refrain from throwing away any blood samples obtained from Mr. Brian David Hill while he was at the Hospital on September 21, 2018, pending further investigation for the indecent exposure. Since both failed to protect exculpatory evidence, Petitioner cannot prove the levels but the Commonwealth cannot claim that Petitioner wasn't under any drug, substance, narcotic, or gas at the time he was naked on September 21, 2018, and around the time he was at the Hospital.

Judge Brinks, at the time he was judicial official, had erred as a matter of law in finding the Petitioner guilty of Virginia Code § 18.2-387.

Judge Brinks, at the time he was judicial official, had erred as a matter of law in finding the Petitioner guilty of Virginia Code § 18.2-387 beyond a reasonable doubt.

Here is the case law that no court appointed lawyer had ever presented or argued in the General District Court.

Price v. Commonwealth, 214 Va. 490, 493 (Va. 1974) ("There we held that a portrayal of nudity is not, as a matter of law, a sufficient basis for a finding that a

work is obscene. See also Upton v. Commonwealth, 211 Va. 445, 447, 177 S.E.2d 528, 530 (1970).")

Neice v. Commonwealth, Record No. 1477-09-3, at *4 (Va. Ct. App. June 8, 2010) ("Thus, by its terms, Code § 18.2-387 requires the Commonwealth to prove that appellant's exposure was obscene. "A portrayal of nudity is not, as a matter of law, a sufficient basis for finding that [it] is obscene." Price v. Commonwealth, 214 Va. 490, 493, 210 S.E.2d 798, 800 (1974) (citing House v. Commonwealth, 210 Va. 121, 127, 169 S.E.2d 572, 577 (1969)). What is "obscene" under applicable law has plagued the courts for the last fifty years. In an oft-quoted remark, Justice Potter Stewart noted, "I shall not today attempt further to define the kinds of material I understand to be [obscene] . . . and perhaps I could never succeed in intelligibly doing so. But I know it when I see it. . . ." Jacobellis v. Ohio, 378 U.S. 184, 197 (1964) (Stewart, J., concurring). This quote aptly summarizes the difficulty faced by the Court in obscenity cases.")

Romick v. Commonwealth, Record No. 1580-12-4, at *5 (Va. Ct. App. Nov. 19, 2013) ("Although Romick's behavior was bizarre, the evidence merely proved nudity and was insufficient to prove Romick's actions had as its dominant purpose a prurient interest in sex.")

17

A.M. v. Commonwealth, Record No. 1150-12-4, at *4-5 (Va. Ct. App. Feb. 12, 2013) ("While "private parts" can include the buttocks, Hart v. Commonwealth, 18 Va. App. 77, 79, 441 S.E.2d 706, 707 (1994), Code § 18.2-387 does not criminalize mere exposure of a naked body, see Price v. Commonwealth, 214 Va. 490, 493, 201 S.E.2d 798, 800 (1974) ("A portrayal of nudity is not, as a matter of law, a sufficient basis for finding that [it] is obscene."). Instead, a conviction under Code § 18.2-387 requires proof beyond a reasonable doubt of obscenity. Code § 18.2-372 defines the word "obscene" accordingly:

The word "obscene" where it appears in this article shall mean that which, considered as a whole, has as its dominant theme or purpose an appeal to the prurient interest in sex, that is, a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse, and which goes substantially beyond customary limits of candor in description or representation of such matters and which, taken as a whole, does not have serious literary, artistic, political or scientific value.

(Emphasis added). The "obscenity" element of Code § 18.2-387 may be satisfied when: (1) the accused admits to possessing such intent, Moses v. Commonwealth, 45 Va. App. 357, 359-60, 611 S.E.2d 607, 608 (2005) (en banc); (2) the defendant is visibly aroused, Morales v. Commonwealth, 31 Va. App. 541, 543, 525 S.E.2d 23, 24 (2000); (3) the defendant engages in masturbatory

18

behavior, Copeland v. Commonwealth, 31 Va. App. 512, 515, 525 S.E.2d 9, 10-11 (2000); or (4) in other circumstances when the totality of the circumstances supports an inference that the accused had as his dominant purpose a prurient interest in sex. See Jackson, 443 U.S. at 319. Even with properly according the trial court's factfinding "with the highest degree of appellate deference," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006), the record here does not support the conclusion that appellant's conduct was obscene, as is defined in Code § 18.2-372 and as required by Code § 18.2-387. It was repulsive, disrespectful, and inappropriate in every way - but not actually "obscene" as the General Assembly has defined the meaning of that term in Code § 18.2-372.")

The Commonwealth did not prove intent in the General District Court trial.

The General District Court erred in finding that the evidence before it was sufficient to find that Petitioner had violated Virginia Code § 18.2-387 because the evidence fails to show that Appellant acted intentionally to make an obscene display or exposure of his person. That statute provides, in relevant part, that "[e]very person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor." Va. Code § 18.2-387 (emphases added).

19

While the evidence may show that Petitioner was naked in public at night, as stated above, nudity, without more, is not obscene under Virginia law. Rather, "[t]he word 'obscene' where it appears in this article shall mean that which, considered as a whole, has as its dominant theme or purpose an appeal to the prurient interest in sex, that is a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse, and which goes substantially beyond customary limits of candor in description or representation of such matters and which, taken as a whole, does not have serious literary, artistic, political or scientific value." Va. Code § 18.2-372 (emphasis added). While Virginia does not appear to have established a clean definition of criminal intent, Black's Law Dictionary defines it as "[a]n intent to commit an actus reus without any justification, excuse, or other defense."

In summary, in order to show that Petitioner violated the indecent exposure statute under Virginia law, the Commonwealth was required to prove, among other things, that Petitioner had the intent to display or expose himself in a way which has, as its dominant theme or purpose, appeal to the prurient interest in sex, as further defined above, without any justification, excuse, or other defense. The Commonwealth failed to do so. Rather, the Commonwealth's evidence, presented through its own witness or witnesses, showed Petitioner as someone who was

running around naked between midnight and 3:00 a.m. and taking pictures of

himself because he believed that someone was going to hurt his family if he did not

do so. Then there is also evidence that was uninvestigated on the record in regards

to carbon monoxide. See CORRESPONDENCE, Exhibit 1 which the page footer

says "Page 295" testimony from Pete Compton, a chimney expert from Bassett,

Virginia, and licensed in Virginia. The Commonwealth and the defense counsel

both failed to conduct any investigation and inquiry into Pete Compton and the

evidence of carbon monoxide gas found in Petitioner's apartment, the living

residence of Petitioner at the time in 2018, which may help to explain his abnormal

and irrational behavior.

The General District Court did not hear, however, any evidence of Petitioner

having his dominant theme, or purpose being an appeal to the prurient interest in

sex. For example, there was no evidence of Petitioner making any sexual remarks,

being aroused, masturbating (photos of Petitioner submitted by Mr. Hall are

questionable but do not show masturbation as masturbation is moving/rubbing the

genital repetitively until an excretion occurs and byproducts thereof which that

action did not happen), or enjoying his conduct, sexually or otherwise. If a person

was purposing to expose himself in public because he or she found it sexually

arousing, it would be logical that he or she would pick a place and time where he

or she would expect to encounter lots of members of the public. Appellant did not

do that. Rather, he was running around between midnight and 3:00 a.m. and the witnesses to his nudity were few.

Hence, the statements Petitioner made to police and his conduct both indicate that, in the light most favorable to the Commonwealth, he was naked in public at nighttime while having a psychiatric episode, but without the intent necessary to commit indecent exposure under Virginia law. Consequently, the district court erred, as a matter of law, when it found that Petitioner had violated the Virginia state law offense of indecent exposure as per Virginia Code § 18.2-387. The mental evaluator in the General District Court did not know about the Piedmont Community Services diagnosis from Dr. Conrad Daum, a forensic psychiatrist diagnosing Brian with "psychosis" in October of 2018. The psychologist did not know that Petitioner had been subject to carbon monoxide gas in the home because Petitioner did not know until after his conviction but the evidence is listed in the record of the Circuit Court. For either attorney to mention nothing of it and not investigating any of it, and not showing either Court the concerning issue of carbon monoxide and how it affects the intent in regards to Petitioner and the indecent exposure law. Counsel failed to do any of it, yet Attorney Edward Kennedy from Clarksburg, West Virginia, as per Petitioner's federal appeal on his Supervised Release Violation, that attorney actually fought for him but never Matthew Clark, and never Lauren McGarry. See Fourth Circuit,

U.S. Court of Appeals case, USCA4 Appeal: 19-4758, Doc: 21, Filed: 12/19/2019,

Pg: 1-22. Even Scott Albrecht tried his best but still didn't cite the case law, didn't

even attempt a motion to dismiss, didn't send any letters for "litigation hold" to ask

Sovah Hospital to hold onto the blood vials and not destroy the evidence, and

didn't give all of the concerning medical record materials to the psychologist who

had conducted the evaluation in the General District Court. What a failure.

Petitioner has more than enough evidence of ineffective assistance of counsel that

was defective in both of his direct criminal appeal and throughout the criminal

case.

Petitioner did not validly withdrawn his appeal in the Circuit Court and was

apparent on the record itself with his rantings within the very "FAX" Motion "to

Withdraw Appeal" which the Circuit Court even erred on the record by ignoring

what was obvious here, and therefore Petitioner entered no valid guilty plea since

no papers were signed ever stating the word "guilty", no verbal plea was ever

entered on the record. Petitioner was never questioned in open court about why he

was withdrawing his appeal, what rights he had and the very rights that would be

waived by agreeing to withdraw the appeal and accepting the decision of guilt in

the General District Court.

See "MOTION- FAX TO WITHDRAW APPEAL," pg. 421 – 432. A

waiver of appeal is invalid if the record shows that counsel was ineffective.

23

See United States v. Kelly, 915 F.3d 344 (5th Cir. 2019) "This court reviews de novo whether an appeal waiver bars an appeal." United States v. Keele, 755 F.3d 752, 754 (5th Cir. 2014). " A criminal defendant may waive his statutory right to appeal in a valid plea agreement." United States v. Pleitez, 876 F.3d 150, 156 (5th Cir. 2017). When deciding "whether an appeal of a sentence is barred by an appeal waiver provision in a plea agree-ment, we conduct a two-step inquiry: (1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement." United States v. Bond, 414 F.3d 542, 544 (5th Cir. 2005). For a waiver to be knowing and voluntary, "[a] defendant must know that he had a 'right to appeal his sentence and that he was giving up that right.'" United States v. Portillo, 18 F.3d 290, 292 (5th Cir. 1994) (quoting United States v. Melancon, 972 F.2d 566, 568 (5th Cir. 1992)). Moreover, "[a]waiver is both knowing and voluntary if the defendant indicates that he read and understood the agreement and the agreement contains an 'explicit, un-ambiguous waiver of appeal.'" Keele, 755 F.3d at 754 (quoting United States v. McKinney, 406 F.3d 744, 746 (5th Cir. 2005)). But, as acknowledged in the plea agreement, "a defendant may always avoid a waiver on the limited grounds that the waiver of appeal itself was tainted by [IAC]." United States v. White, 307 F.3d 336, 339 (5th Cir. 2002).

24

See United States v. Moore, No. 11-5073, at *3-4 (4th Cir. Aug. 3, 2012) ("Cannon's appellate waiver excepted appeals based on ineffective assistance of counsel. He therefore has not waived his right to pursue this claim on direct appeal. However, claims of ineffective assistance of counsel are not cognizable on direct appeal unless the record conclusively establishes that counsel provided ineffective assistance. United States v. Baldovinos, 434 F.3d 233, 239 (4th Cir. 2006); see also United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.") (internal quotation marks omitted). The record does not conclusively establish that Cannon's counsel was ineffective. Thus, we affirm Cannon's conviction and sentence to the extent that he makes this challenge."). Osborne v. U.S., Criminal Action No. 1:07CR00057, at *9 (W.D. Va. Jan. 19, 2010) (" See Harper v. United States, ___ F.Supp.2d ___, 2009 WL 3245452, *5 (N.D.W.Va. 2009) ("Claims for ineffective assistance of counsel, for actions taken after a defendant's entry into a plea agreement, are not waived by a general waiver of appeal rights contained in a plea agreement."); Moon v. United States, 181 F. Supp. 2d 596, 603 (E.D.Va. 2002) ("The court finds that petitioner's ineffective assistance of counsel at sentencing [lies] outside the scope of the waiver."); Butler v. United States, 173 F. Supp. 2d 489, 494 (E.D.Va. 2001) (stating that "a § 2255

waiver should not bar ineffective assistance of counsel claims . . . just as direct appeal waivers do not bar those claims").")

As long as Petitioner can show from the record that counsel was constitutionally deficient and had caused his waiver of appeal in the Circuit Court, such as his "MOTION- FAX TO WITHDRAW APPEAL," pg. 421 - 432, and the Court's "ORDER IN MISDEMEANOR OR TRAFFIC INFRACTION," pg. 433 – 433, his withdrawal of appeal can be ruled invalid, null and void, by this Court or even the higher Court of Appeals. Null and void judgments can be challenged at any time. Judgments are void or voidable when due process was deprived or procured by fraud.

Payne v. Commonwealth, 5 Va. App. 498, 499 (Va. Ct. App. 1988) ("(5) Right to Counsel — Effective Assistance of Counsel — Standard. — Code Sec. 19.2-317.1 allows an appellate court to entertain claims of ineffective assistance of counsel on direct appeal only if all matters relating to such issue are fully contained within the record of the trial.")

## NEW EVIDENCE SUBMITTED IN ATTACHMENT TO THIS MOTION

Petitioner submits the following new pieces of evidence not previously known to the Martinsville General District Court and/or may not even known to the Circuit Court of Martinsville.

26

EXHIBITS ATTACHED TO THIS MOTION:

| Exhibit No. | Description | Page range |
|---|---|---|
| EXHIBIT 1. | Three photographs and two pages of scanned materials - 5 pages total<br><br>CONTENTS:<br>(1)Front of envelope with Binder Clip and attached fax transmitted page<br>(2)Front of Envelope<br>(3)Back of Envelope<br>(4)Certified Mail receipt, USPS receipt, and Return Receipt(front)<br>(5)Certified Mail receipt, USPS receipt, and Return Receipt(back) | 1-6 |
| EXHIBIT 2. | 1-page letter statement from Pete Compton, expert chimney sweeper witness. Pete Compton of ACE Chimney Sweeper, Bassett, Virginia. 2 pages of misc. exhibit page markers from federal court record. | 7-10 |
| EXHIBIT 3. | The Sovah Hospital medical record of September 21, 2018. | 11-19 |
| EXHIBIT 4. | A photocopy of the filing in Writ of Habeas Corpus showing a photocopy of the letter mailed to Martinsville Police Chief, the photocopy of the very same letter contained in the envelope photographed in Exhibit 1. | 20-34 |

34 pages total including Exhibit page markers.

How Exhibit 1 arguably applies to Writ of Error Coram Vobis:

Exhibit 1 proves that Martinsville Police Officer Sergeant Robert Jones did not

have all of the facts available to him at the time that Petitioner was charged with

indecent exposure in the "Arrest Warrant". In fact it shows the lack-of-

27

investigation and incompetence of not only Martinsville Police Department but also the incompetence of the Commonwealth Attorney of Martinsville. The envelope was never opened by the Commonwealth Attorney and neither of the Police Department and neither of Matthew Clark. Petitioner is willing to present this envelope as physical piece of evidence if requested by this Court and allow the other party to conduct discovery examination, for the Commonwealth Attorney to examine the envelope and take photographs of the envelope, as well as any other applicable action under the Rules of Discovery. See **Exhibit 4** for copy of letter.

What was contained in the envelope? A letter to the Police Chief of Martinsville (**Exhibit 4**) with evidence attached to the letter. A copy of that letter was filed in the Writ of Habeas Corpus petition under case no. CL19000331-00. A photocopy of all of the contents of what was in the sealed envelope was also filed with the U.S. District Court. That envelope was originally mailed to Martinsville Police Department Chief G. E. Cassady, then was transferred to the Commonwealth Attorney, then to Attorney Matthew Scott Thomas Clark, then it ended up in Petitioner's hands.

See DECLARATION entitled "Evidence Declaration of Brian David Hill Regarding Carbon Monoxide and Letgter to Martinsville Police Chief in Opposition to Government's/Respondent's Documents # 156, # 157, # 158, # 159, and # 160 " filed by BRIAN DAVID HILL. (Attachments: # 1 Exhibit 0, # 2

Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, #

8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Envelope - Front

and Back) (Garland, Leah) (Entered: 07/22/2019). All within Document #181, U.S.

District Court for the Middle District of North Carolina federal court record.

How Exhibit 2 arguably applies to Writ of Error Coram Vobis:

That a chimney sweeping expert Pete Compton acknowledged to finding

evidence of carbon monoxide gas in Petitioner's apartment in 2019. Because the

gas was never discovered, Petitioner and his mother Roberta Hill had suffered

months and months of carbon monoxide gas without even knowing it. Carbon

monoxide gas can cause weird and abnormal behaviors, even inappropriate

behaviors. Carbon monoxide gas affects the mental state of its victim. It can even

cause psychosis, hallucinations, and even death. It is known as the silent killer.

How Exhibit 3 arguably applies to Writ of Error Coram Vobis:

That Sovah Hospital prematurely released Petitioner to Martinsville City

Jail, while he had exhibited evidence of Sinus Tachycardia, the laboratory tests

were ordered but then later deleted from the chart (See Pg. 19 of **Exhibit 3)**. This

proves spoliation of evidence since the blood vials aka the blood drawn from Brian

David Hill were thrown away and the laboratory tests would have found the levels

of carbon monoxide gas poisoning. The lab tests were canceled without

explanation. The Hospital never tested the blood sugar of Brian David Hill.
Petitioner had cuts/abrasions all over his body. Petitioner should have been
committed to the hospital until the laboratory tests were completed and to
investigate why Petitioner had Sinus Tachycardia type readings for his resting
blood pulse being over 100 which is not normal for a healthy person. The Hospital
medically neglected him and then covered up the blood drawn evidence which is
spoliation of evidence. Once Petitioner was charged with a crime, that created a
litigation for the Commonwealth of Virginia to prosecute him, and thus Scott
Albrecht should have quickly filed a "litigation hold" letter as well as the
Commonwealth Attorney and that would have been the end of Petitioner facing a
trial for indecent exposure once the levels were made known by lab tests. Both
lawyers failed justice and failed the Court. The Court has erred to even have
acknowledged that Petitioner was medically cleared and then arrested by
Martinsville Police. It is medical neglect that caused the wrongful conviction of
Petitioner and destroyed exculpatory evidence of blood samples obtained at Sovah
Hospital of Martinsville. What a terrible hospital, they need to be SUED for
Petitioner's suffering and criminal case legal drama. Those same Hospital records
were likely reviewed by the psychologist who had evaluated Petitioner in
November, 2018 for the General District Court over competency.

How Exhibit 4 arguably applies to Writ of Error Coram Vobis:

The Exhibit 4 filing shows a photocopy of the very letter that was mailed in the envelope that was photographed and marked as **Exhibit 1** in attachment to this Motion. Also the exhibit marker shows that the very same letter was also filed in the Writ of Habeas Corpus case by Petitioner.

Neighbors v. Commonwealth, 274 Va. 503, 508 (Va. 2007) ("The principal function of the writ is to afford to the <u>court in which an action was tried an</u> <u>opportunity to correct its own record with reference to a vital fact not known when</u> <u>the judgment was rendered,</u> and which could not have been presented by a motion for a new trial, appeal or other existing statutory proceeding. Black's Law Diet., 3 ed., p. 1861; 24 C.J.S., Criminal Law, § 1606 b., p. 145; Ford v. Commonwealth, 312 Ky. 718, 229 S.W.2d 470. It lies for an error of fact not apparent on the record, not attributable to the applicant's negligence, and which if known by the court would have prevented rendition of the judgment. It does not lie for newly-discovered evidence or newly-arising facts, or facts adjudicated on the trial. It is not available where advantage could have been taken of the alleged error at the trial, as where the facts complained of were known before or at the trial, or where at the trial the accused or his attorney knew of the existence of such facts but failed to present them. 24 C.J.S., Criminal Law, § 1606 at p. 148; 49 C.J.S., Judgments, § 312 c, pp. 563, 567.")

There were a lot of errors of fact. Petitioner was not obscene and was under a substance, gas, narcotic, or drug which would explain his naked behavior at night. The spoliation of evidence should have been noted in the General District Court. The carbon monoxide evidence should have been made known in the General District Court. The very substance or gas that affected his behavior but was not made known to the General District Court. The Police failed to conduct a real and thorough investigation, they just wanted a quick criminal conviction systematically like with all of the other people they had charged, let the legal process to have dealt with it.

## CONCLUSION

For the foregoing reasons, Petitioner asks this Court to open up the General District Court case and conviction of indecent exposure on December 21, 2018, and open up the reaffirmation of conviction on November 15, 2019, for investigation and inquiry, to correct the errors of fact and errors of law, and to acquit Petitioner of indecent exposure as he is legally innocent. Petitioner may have no other means to legally challenge his conviction as Habeas Corpus is limited to state custody requirement, and Direct Appeal may not be available since Petitioner had withdrawn his appeal. This Writ may be Petitioner's last resort to correct a miscarriage of justice, wrongfully convicting an innocent man which was not as a matter of law. As a matter of law, Petitioner is actually innocent.

Petitioner asks this Honorable Court to correct the errors of facts, errors of law, and give Petitioner an opportunity to challenge and overturn his wrongful conviction on December 21, 2018, and November 15, 2019 of withdrawing appeal back to the General District Court. Petitioner asks for permanent acquittal and vacatur of the criminal conviction once and for all. Petitioner asks for any other relief that may be appropriate for the interests of justice. Thank You!

Respectfully filed with this Court, this the 16th Day of March, 2020.



**BRIAN DAVID HILL**

Brian D. Hill
*signed*

Brian David Hill –
Ally of Qanon
Founder of USWGO
Alternative News
310 Forest Street, Apt.
2 Martinsville,
Virginia 24112
(276) 790-3505
*Pro Se*



### CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 16th day of March, 2020, I caused this "Motion for writ of error coram vobis" to be hand delivered to the

Commonwealth of Virginia through the Commonwealth Attorney's Office of Martinsville and will attach proof of service (*proof of receipt obtained from the Commonwealth Attorney's Office*) which shall satisfy proof of service on the following parties:

Glen Andrew Hall, Esq.
Martinsville Commonwealth's Attorney's Office
55 West Church Street
Martinsville, Virginia
24112
(276) 403-5470

*Counsel for the Commonwealth*









Brian David Hill –
Ally of Qanon
Founder of USWGO
Alternative News
310 Forest Street, Apt.
2 Martinsville,
Virginia 24112
(276) 790-3505
*Pro Se*

34

# RECEIVED A DOCUMENT FROM BRIAN HILL:

_A Smith_
NAME

_03/16/20_
DATE

## Commonwealth v. BRIAN HILL

lao

# Exhibit 1

USWGO
ALLY OF QANON // DRAIN THE SWAMP



CIRCUIT COURT OF MARTINSVILLE, CASE NO.
CR19000009-00

Exhibit in attachment to "Motion for writ of error coram vobis"



Transmitted u___ ___ a voice software - http://www.ventafax.com
Fax ID: 276-780-3506                         Page U 1
To: Martinsville Police Department

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**

7017 2460 0000 5750 0122

ATTN: Chief G. E. Cassady
Martinsville Police Department
55 West Church St.
Martinsville, VA 24112

Very Important Evidence.
Please sign for it Chief G. E. Cassady.

I am sorry that it is restricted delivery but I wanted to
make sure that the evidence was picked up by somebody in
your Department.

Medical records/reports, statement from expert witness
Pete Compton a chimney expert. Evidence of threatening
greeting card that was received by a citizen of Martinsville.

A lot of important evidence that needs to be picked up and
reviewed by the Police Chief and given to Officer R. D.
Jones. Please sign for it. Thank you for your time and
attention to this matter. Thank you for your service. God
Bless. USPS rather it be picked up than redelivered. - Brian

For Fax: 276.403.5306



**U.S.W.G.O.** *Brian D. Hill*
*Signed*

**Brian D. Hill**
**310 Forest Street, Apt. 1**
**Martinsville, VA 24112**

7012 2680 0000 5750 9122

$18.95

RESTRICTED DELIVERY

RESTRICTED DELIVERY

RESTRICTED DELIVERY

Turned over to CA, 8/7/2019 1455 hrs.

N.L 7-22-19
won't be back +1
8-1-19

PRIORITY MAIL

TRACKED INSURED

UNITED STATES POSTAL SERVICE

**ATTN: Police Chief G. E. Cassady**
**Martinsville Police Department**
**55 West Church St.**
**Martinsville, VA 24112**



```
===========================================
            MARTINSVILLE
           1123 SPRUCE ST
      MARTINSVILLE, VA 24112-9998
             515652-0362
            (800)275-8777
         07/19/2019 09:12 AM
===========================================
-------------------------------------------
Product          Qty   Unit      Price
                       Price
-------------------------------------------
PM 1-Day          1    $7.35     $7.35
   (Domestic)
   (MARTINSVILLE, VA 24112)
   (Weight:0 Lb 13.30 Oz)
   (Expected Delivery Day)
   (Saturday 07/20/2019)
Return Receipt                   $2.80
   (USPS Return Receipt #)
   (9590940235277275749741)
Cert Mail RstrDel                $8.80
   (Recipient name)
   (G E CASSADY)
   (USPS Certified Mail #)
   (70172680000057509122)

Total:                          $18.95
-------------------------------------------

Cash                            $20.00
Change                          ($1.05)


Includes up to $50 insurance

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit www.usps.com
USPS Tracking or call 1-800-222-1811.


Save this receipt as evidence of
insurance. For information on filing
an insurance claim go to
https://www.usps.com/help/claims.htm

          Preview your Mail
          Track your Packages
          Sign up for FREE @
          www.informeddelivery.com


All sales final on stamps and postage.
Refunds for guaranteed services only.
       Thank you for your business.

       HELP US SERVE YOU BETTER

     TELL US ABOUT YOUR RECENT
           POSTAL EXPERIENCE

              Go to:
   https://postalexperience.com/Pos

   840-5250-0004-003-00041-12438-02

          or scan this code with
           your mobile device:
```





## U.S. Postal Service
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

Certified Mail Fee   $2.80                    0362
                                               13
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)      $_____
☐ Return Receipt (electronic)    $8.80
☐ Certified Mail Restricted Delivery  $0.00    Postmark
☐ Adult Signature Required       $0.00          Here
☐ Adult Signature Restricted Delivery $       JUL 19 2019
Postage          $7.35
                                              07/19/2019
Total Postage and Fees  $18.95

Sent To   ATTN: Chief G. E. Cassady
Street and Apt.  Martinsville Police Department
          55 West Church St.
City, State, ZIP  Martinsville, VA 24112

PS Form 380

---

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                   ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
   G E Cassady                 8/7/2019
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

ATTN: Chief G. E. Cassady
Martinsville Police Department
55 West Church St.
Martinsville, VA 24112

9590 9402 3527 7275 7497 41

2. Article Number (Transfer from service label)
7017 2680 0000 5750 9122

PS Form 3811, July 2015 PSN 7530-02-000-9053







```
=====================================
          MARTINSVILLE
          1123 SPRUCE ST
   MARTINSVILLE, VA 24112-9998
          515652-0362
          (800)275-8777
       07/19/2019 09:12 AM
=====================================
=====================================
                                    
Product        Qty   Unit    Price
                     Price
-------------------------------------
PM 1-Day        1    $7.35   $7.35
    (Domestic)
    (MARTINSVILLE, VA  24112)
    (Weight:0 Lb 13.30 Oz)
    (Expected Delivery Day)
    (Saturday 07/20/2019)
Return Receipt               $2.80
    (USPS Return Receipt #)
    (9590940235277275749741)
Cert Mail RstrDel            $8.80
    (Recipient name)
    (G E CASSADY)
    (USPS Certified Mail #)
    (70172680000057509122)
-------------------------------------
Total:                      $18.95

-------------------------------------
Cash                        $20.00
Change                      ($1.05)
-------------------------------------

Includes up to $50 insurance

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit www.usps.com
USPS Tracking or call 1-800-222-1811.


Save this receipt as evidence of
insurance. For information on filing
an insurance claim go to
https://www.usps.com/help/claims.htm

         Preview your Mail
         Track your Packages
         Sign up for FREE @
         www.informeddelivery.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
      Thank you for your business.

      HELP US SERVE YOU BETTER

   TELL US ABOUT YOUR RECENT
        POSTAL EXPERIENCE

            Go to:
   https://postalexperience.com/Pos

   840-5250-0004-003-00041-12438-02

      or scan this code with
       your mobile device:
```

## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

**OFFICIAL USE**

| Certified Mail Fee | | |
|---|---|---|
| $ | $2.80 | 0362 |
| Extra Services & Fees *(check box, add fee as appropriate)* | | 13 |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $3.80 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | Here |
| ☐ Adult Signature Required | $ $0.00 | JUL 19 2019 |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $7.35 | |
| $ | | 07/19/2019 |
| Total Postage and Fees | | |
| $ | $18.95 | |

Sent To    **ATTN: Chief G. E. Cassady**
Street and Apt.  **Martinsville Police Department**
                 **55 West Church St.**
City, State, ZIP **Martinsville, VA 24112**

PS Form 380

United States
Postal Service

9590 9402 3527 7275 7497 41

USPS TRACKING #

• Sender: Please print your name, address, and ZIP+4® in this box •

U.S.W.G.O.
Brian D. Hill   *Brian D. Hill*
310 Forest Street, Apt. 1   *Signed*
Martinsville, VA 24112

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

# Exhibit 2

USWGO
ALLY OF QANON // DRAIN THE SWAMP



CIRCUIT COURT OF MARTINSVILLE, CASE NO.
CR19000009-00

Exhibit in attachment to "Motion for writ of error coram vobis"

# Exhibit 15

USWGO
QANON // DRAIN THE SWAMP



PETITION FOR WRIT OF HABEAS CORPUS
MARTINSVILLE GENERAL DISTRICT COURT CASE NO. C18-3138
MARTINSVILLE CIRCUIT COURT CASE NO. CR19000009-00

Exhibit in attachment to "BRIEF AND EXHIBITS IN SUPPORT OF PETITION FOR
WRIT OF HABEAS CORPUS"

# Exhibit 1

**USWGO**
**QANON // DRAIN THE SWAMP**
**MAKE AMERICA GREAT AGAIN**



MARTINSVILLE VIRGINIA CIRCUIT COURT CASE NO.  CR19000009-00

UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

To Whom This May Concern:

On January 30, 2019 I went to the house at 310 Forest St., Martinsville, Va 24112 to measure and give a price for a Chimney cover. Roberta Hill and her parents: Ken & Stella Forinash escorted me to Apt 1 to show me the fireplace which had a small amount of white residue inside, no damage to the ceiling and wall around the fireplace.  They then escorted me downstairs to Apt 2 where parts of the ceiling above the fireplace had fallen and there was a lot of damage in the remaining ceiling below the hearth of the fireplace in apt 1 located above apt 2 and a lot of damage along the wall in apt 2 above and on both sides of the fireplace as well as a lot of white residue inside of the fireplace. After this, we went down another flight of stairs to the basement where the gas boiler heater and the gas hot water heater were located to show me that there would be 3 holes in the chimney.

I then went outside and got my ladder to measure the chimney.  This was when I found out that all 3 holes were covered with tin.  Knowing that the gas boiler heater & gas hot water heater needed to be vented at all times, I immediately removed the tin covering the hole so carbon monoxide would no longer go through the house.  Ms Hill had informed me that she had called a chimney sweep in Rocky Mount, VA in October, 2017 to clean the chimney and to put screen on all holes after the family spotted birds going into their fireplace the year before. In my 25 years of doing this type of work, this was the first time I have ever seen tin covering holes where it is important to vent gas heaters.  I showed the family the tin I had just removed and had them to climb my ladder to look at the chimney. We then went back in the house, and I informed them that the white residue inside both fireplaces was from the gas that had no other place to escape and informed them that they had been exposed to carbon monoxide poisoning, *GA* but now that the tin had been removed, there should no longer be any problems.    I returned to *SS* the house on February 4, 2019 and installed a stainless steel multifaceted chimney cap vented with screen on all 4 sides.

Signed as a witness on this date: _Kenneth R. Fournash  6-3-19_

_Elmer P. Compton II_        6-13-19

**Pete Compton    ACE Chimney & Wildlife; Bassett, VA**

**Phone  276-629-4453**



# Exhibit 3

USWGO
ALLY OF QANON // DRAIN THE SWAMP



CIRCUIT COURT OF MARTINSVILLE, CASE NO.
CR19000009-00

Exhibit in attachment to "Motion for writ of error coram vobis"

# Exhibit 10

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



MARTINSVILLE VIRGINIA CIRCUIT COURT CASE NO.  CR19000009-00

UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

Brian Hill
MRN: MM00370912
ACCT: MM7806761243



# Sovah Health Martinsville

320 Hospital Drive
Martinsville, VA 24112
276-666-7237

78067b 1243

**Emergency Department Instructions for:**

**Hill, Brian D**

**Arrival Date:**

**Friday, September 21, 2018**

Thank you for choosing Sovah Health Martinsville for your care today. The examination and treatment you have received in the Emergency Department today have been rendered on an emergency basis only and are not intended to be a substitute for an effort to provide complete medical care. You should contact your follow-up physician as it is important that you let him or her check you and report any new or remaining problems since it is impossible to recognize and treat all elements of an injury or illness in a single emergency care center visit.

**Care provided by:** Hinchman, Brant, DO

**Diagnosis:** Abrasion, right knee; Abrasion of unspecified front wall of thorax

| DISCHARGE INSTRUCTIONS | FORMS |
|---|---|
| VIS, Tetanus, Diphtheria (Td) – CDC<br>Abrasion, Easy-to-Read<br>Knee Pain, Easy-to-Read | Medication Reconciliation |
| **FOLLOW UP INSTRUCTIONS** | **PRESCRIPTIONS** |
| **Private Physician**<br>    When: Tomorrow; Reason: Further diagnostic work-up, Recheck today's complaints, Continuance of care<br>**Emergency Department**<br>    When: As needed; Reason: Fever > 102 F, Trouble breathing, Worsening of condition | None |
| **SPECIAL NOTES** | |
| None | |

National Hopeline Network: 1-800-784-2433

If you received a narcotic or sedative medication during your Emergency Department stay you should not drive, drink alcohol or operate heavy machinery for the next 8 hours as this medication can cause drowsiness, dizziness, and decrease your response time to events.

I hereby acknowledge that I have received a copy of my transition care record and understand the above instructions and prescriptions.

X _Brian D. Hill_

**Brian Hill**

_Jenica Tate, RN BSN_

**ED Physician or Nurse**
09/21/2018 04:52

MM00370912          MM7806761243      SOVAH Health - Martinsville
Discharge Instructions - Scanned - Page 1/3                          Job 23328 (05/17/2019 13:34) - Page 1 Doc# 1



EMERGENCY DEPARTMENT RECORD
Physician Documentation
Sovah Health Martinsville
Name: Brian Hill
Age: 28 yrs
Sex: Male
DOB: 05/26/1990
MRN: MM00370912
Arrival Date: 09/21/2018
Time: 04:04
Account#: MM7806761243
Bed ER 9
Private MD:
ED Physician Hinchman, Brant
HPI:
09/21
04:40 This 28 yrs old White Male presents to ER via Law Enforcement with      bdh
complaints of Knee Pain.
09/21
04:48 28-year-old male with diabetes and autism presents for evaluation      bdh
after complaining of right knee pain and scrapes and abrasions.
Patient was apparently taking pictures of himself in the nude across
town this evening and when police attempted apprehend him brain
through Briar patch. Patient does report scratches and abrasions to
the right knee but no pain on range of motion. Unknown last tetanus..

Historical:
- Allergies: Ranitidine;
- PMHx: autism; Diabetes - IDDM; OCD;
- Exposure Risk/Travel Screening:: Patient has not been out of the
country in last 30 days. Have you been in contact with anyone who
is ill that has traveled outside of the country in the last 30
days? No.
- Social history:: Tobacco Status: The patient states he/she has
never used tobacco. The patient/guardian denies using alcohol,
street drugs, The patient's primary language is English. The
patient's preferred language is English.
- Family history:: No immediate family members are acutely ill.
- Sepsis Screening:: Sepsis screening negative at this time.
- Suicide Risk Screen:: Have you been feeling depressed in the last
couple of weeks? No Have you been feeling hopeless to the extent
that you would want to end your life? No Have you attempted suicide
or had a plan to attempt within the last 12 months? No.
- Abuse Screen:: Patient verbally denies physical, verbal and
emotional abuse/neglect.
- Tuberculosis screening:: No symptoms or risk factors identified.
- The history from nurses notes was reviewed; and my personal history
differs from that reported to nursing.


ROS:
09/21
04:49 All other systems are negative, except as documented below.      bdh

Constitutional: Negative for chills, fever. Respiratory: Negative for

Brian Hill
MRN: MM00370912
ACCT: MM7806761243



## FOLLOW UP INSTRUCTIONS

Private Physician
   When: Tomorrow
   Reason: Further diagnostic work-up, Recheck today's complaints, Continuance of care

Emergency Department
   When: As needed
   Reason: Fever > 102 F, Trouble breathing, Worsening of condition

7806761243

MM00370912    MM7806761243    SOVAH Health - Martinsville
Discharge Instructions - Scanned  – Page 3/3    Job 23328 (05/17/2019 13:34) – Page 3  Doc# 1

Case 1:13-cr-00435-TDS   Document 181-11   Filed 07/22/19   Page 4 of 8



Brian Hill
MRN: MM00370912
ACCT: MM7806761243

**MRN # MM00370912**

**X-RAYS and LAB TESTS:**
If you had x-rays today they were read by the emergency physician. Your x-rays will also be read by a radiologist within 24 hours. If you had a culture done it will take 24 to 72 hours to get the results. If there is a change in the x-ray diagnosis or a positive culture, we will contact you. Please verify your current phone number prior to discharge at the check out desk.

**MEDICATIONS:**
If you received a prescription for medication(s) today, it is important that when you fill this you let the pharmacist know all the other medications that you are on and any allergies you might have. It is also important that you notify your follow-up physician of all your medications including the prescriptions you may receive today.

## TESTS AND PROCEDURES

**Labs**
None

**Rad**
None

**Procedures**
None

**Other**
Call ERT, IV saline lock

**Chart Copy**

7806761234



cough, dyspnea on exertion, shortness of breath. MS/extremity:
Positive for pain, Negative for decreased range of motion,
paresthesias, swelling, tenderness, tingling. Skin: Positive for
abrasion(s), Negative for rash, swelling.

Exam:
09/21
04:49 Constitutional: This is a well developed, well nourished patient who bdh
is awake, alert, and in no acute distress. Head/Face: Normocephalic,
atraumatic. Eyes: Pupils equal round and reactive to light,
extra-ocular motions intact. Lids and lashes normal. Conjunctiva
and sclera are non-icteric and not injected. Cornea within normal
limits. Periorbital areas with no swelling, redness, or edema. ENT:
Oropharynx with no redness, swelling, or masses, exudates, or
evidence of obstruction, uvula midline. Mucous membranes moist. No
meningismus. Neck:   Supple, full range of motion without nuchal
rigidity, or vertebral point tenderness. No Meningismus. No JVD
Cardiovascular: Regular rate and rhythm with a normal S1 and S2. No
gallops, murmurs, or rubs. No JVD. No pulse deficits. Respiratory:
Lungs have equal breath sounds bilaterally, clear to auscultation and
percussion. No rales, rhonchi or wheezes noted. No increased work
of breathing, no retractions or nasal flaring. Abdomen/GI:  Soft,
non-tender, with normal bowel sounds. No distension or tympany. No
guarding or rebound.   No pulsatile mass. Back: No spinal
tenderness. No costovertebral tenderness. Full range of motion.
Skin: Multiple superficial abrasions to the groin and abdomen
without fluctuance or tenderness. MS/ Extremity: Pulses equal, no
cyanosis. Neurovascular intact. Full, normal range of motion. No
peripheral edema, tenderness.   Abrasion to right knee but nontender,
no deformity or swelling. Ambulating without difficulty. Neuro:
Awake and alert, GCS 15, oriented to person, place, time, and
situation. Cranial nerves II-XII grossly intact.   Psych: Awake,
alert, with orientation to person, place and time.   Behavior, mood,
and affect are within normal limits.

Vital Signs:
09/21
04:09 BP 124 / 86; Pulse 119; Resp 19; Temp 98; Pulse Ox 98% ; Weight 99.79 jt
kg; Height 6 ft. 0 in. (182.88 cm); Pain 0/10;
09/21
05:01 BP 119 / 80; Pulse 106; Resp 16; Temp 98.2; Pulse Ox 99% ; Pain 0/10; jt
09/21
04:09 Body Mass Index 29.84 (99.79 kg, 182.88 cm)                          jt

MDM:
09/21
04:04 MSE Initiated by Provider.                                          bdh
09/21
04:50 Differential diagnosis: fracture, sprain, penetrating trauma, et al.  bdh
ED course: Cleared from a psychiatric standpoint by Behavioral
Health. Patient will be discharged to jail. No new complaints.. Data
reviewed: vital signs, nurses notes. Counseling: I had a detailed

discussion with the patient and/or guardian regarding: the historical
points, exam findings, and any diagnostic results supporting the

MM00370912         MM7806781243      SOVAH Health - Martinsville
ED Physician Record - Electronic - Page 2/4                    Job 23328 (05/17/2019 13:34) - Page 5 Doc# 2

Case 1:13-cr-00435-TDS   Document 181-11   Filed 07/22/19   Page 6 of 8



discharge/admit diagnosis, the need for outpatient follow up, to
return to the emergency department if symptoms worsen or persist or
if there are any questions or concerns that arise at home.

09/21
04:16 Order name: Call ERT; Complete Time: 04:25                          bdh
09/21
04:16 Order name: IV saline lock; Complete Time: 04:36                    bdh
09/21
04:29 Order name: Other: NO suicidal homicidal risk; Complete Time: 05:03  bdh

Dispensed Medications:
Discontinued: NS 0.9% 1000 ml IV at 999 mL/hr once
09/21
04:36 Drug: Tetanus-Diphtheria Toxoid Adult 0.5 ml (Manufacturer: Grifols   lbl
Therapeutics. Exp: 09/27/2020. Lot #: A112A. ) Route: IM; Site: right
deltoid;
09/21
05:04 Follow up: Response: No adverse reaction                            lbl
09/21
04:36 Drug: NS 0.9% 1000 ml Route: IV; Rate: 999 mL/hr; Site: right arm;   lbl
Delivery: Primary tubing;
09/21
05:11 Follow up: IV Status: Completed infusion                            dr


Disposition:
09/21
04:52 Electronically signed by Hinchman, Brant, DO at 04:52 on 09/21/2018.  bdh
Chart complete.

Disposition:
09/21/18 04:52 Discharged to Jail/Police. Impression: Abrasion, right knee,
Abrasion of unspecified front wall of thorax.
- Condition is Stable.
- Discharge Instructions: VIS, Tetanus, Diphtheria (Td) - CDC,
Abrasion, Easy-to-Read, Knee Pain, Easy-to-Read.

- Medication Reconciliation form.
- Follow up: Private Physician; When: Tomorrow; Reason: Further
diagnostic work-up, Recheck today's complaints, Continuance of
care. Follow up: Emergency Department; When: As needed; Reason:
Fever > 102 F, Trouble breathing, Worsening of condition.
- Problem is new.
- Symptoms have improved.


Order Results:
There are currently no results for this order.
Signatures:

Dispatcher MedHost                              EDMS
Tate, Jessica, RN                     RN        jt
Hinchman, Brant, DO                   DO        bdh

                    MM00370912        MM7808761243     SOVAH Health - Martinsville
ED Physician Record - Electronic - Page 3/4                      Job 23328 (05/17/2019 13:34) - Page 6 Doc# 2

Case 1:13-cr-00435-TDS   Document 181-11   Filed 07/22/19   Page 7 of 8



Ramey, Nicole                                    nmr
Bouldin, Lauren, RN                    RN     lbl
Reynolds, Daniel R                     RN     dr

Corrections: (The following items were deleted from the chart)
09/21
04:48 09/21 04:16 COMPREHENSIVE METABOLIC PANEL+LAB ordered. EDMS          EDMS
09/21
04:48 09/21 04:16 COMPLETE BLD COUNT W/AUTO DIFF+LAB ordered. EDMS         EDMS
09/21
04:49 09/21 04:16 CPK, TOTAL+LAB ordered. SDMS                             EDMS
09/21
04:50 09/21 04:16 ALCOHOL, ETHYL+LAB ordered. EDMS                         EDMS
09/21
04:50 09/21 04:16 STAT OVERDOSE PANEL+LAB ordered. EDMS                    EDMS
09/21
04:52 09/21 04:52 09/21/2018 04:52 Discharged to Jail/Police. Impression:  bdh
Abrasion, right knee; Abrasion of unspecified front wall of thorax.
Condition is Stable. Discharge Instructions: Medication
Reconciliation. Follow up: Private Physician; When: Tomorrow; Reason:
Further diagnostic work-up, Recheck today's complaints, Continuance
of care. Follow up: Emergency Department; When: As needed; Reason:
Fever > 102 F, Trouble breathing, Worsening of condition. Problem is
new. Symptoms have improved. bdh
09/21
04:54 09/21 04:16 URINALYSIS W/REFLEX TO CULTURE+LAB ordered. EDMS         EDMS

*****************************************************************************

# Exhibit 4

USWGO
ALLY OF QANON // DRAIN THE SWAMP



CIRCUIT COURT OF MARTINSVILLE, CASE NO.
CR19000009-00

Exhibit in attachment to "Motion for writ of error coram vobis"

# Exhibit 16

USWGO
QANON // DRAIN THE SWAMP



PETITION FOR WRIT OF HABEAS CORPUS
MARTINSVILLE GENERAL DISTRICT COURT CASE NO. C18-3138
MARTINSVILLE CIRCUIT COURT CASE NO. CR19000009-00

Exhibit in attachment to "BRIEF AND EXHIBITS IN SUPPORT OF PETITION FOR
WRIT OF HABEAS CORPUS"

# Exhibit 0

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



MARTINSVILLE VIRGINIA CIRCUIT COURT CASE NO.  CR19000009-00

UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

Evidence to Martinsville Police explaining why indecent exposure

Finalized: Thursday, July 18, 2019 - 11:14 PM

ATTN: Police Chief G. E. Cassady — Carbon Copy should be made for: Sgt. R. D. Jones
Martinsville Police Department
55 West Church St. Martinsville, VA 24112
Phone #: 276-638-8751
Fax #: 276-403-5306
Certified Mail tracking no.: 7017-2680-0000-5750-9122
Return receipt tracking no.: 9590-9402-3527-7275-7497-41

ATTN: Police Chief G. E. Cassady; CC: Sgt. R. D. Jones

Dear Hon. Police Chief of Martinsville, Virginia,

I would like to respectfully reach out to your Police Department to bring evidence to
your attention which will explain a lot of things and resolve the issue of indecent
exposure which your officer Sgt. R. D. Jones had arrested me for on September 21,
2018, General District Court case no. C18-3138, and Circuit Court case no.
CR19000009-00. This case has been the cause of many pleadings being filed on and
after Documents #152 on federal court case no. 1:13-cr-435-1, Middle District of North
Carolina, concerning the indecent exposure charge.

I also apologize for saying a few cuss words to Sgt. R. D. Jones last year. I have had the
diagnosis of Autism Spectrum Disorder (a neurological and mental disorder) for a long
time and even have a handicap placard in the Virginia DMV system in Martinsville, as
proof of my Autism. However my letter isn't to only inform you of proof concerning my
Autism in the Virginia DMV records, but that I wish to present evidence of carbon
monoxide gas poisoning which affected me and Roberta Hill (my mother) prior to me
being arrested on September 21, 2018. The evidence comes from different sources.
Whether the man in the hoodie had existed or whether it was an hallucination caused by
the Carbon Monoxide ("CO") gas poisoning, it would give your police department better
clarification on why Brian David Hill had made contradictory and/or confusing
statements back on September 21, 2018.

Sgt. R. D. Jones was right when he told me that there was more to the story. The proof is
now in your hands, that I was a victim of CO gas poisoning since November, 2017. The
time of the toxin accumulating in the bloodstream can cause real brain damage, and can
lead to inappropriate behaviors, hallucinations, psychosis (*that the person makes a claim
that cannot be based on reality*), mental confusion, Sinus Tachycardia, abnormally high

9590-9402-3527-7275-7497-41 – Pages 1 of 9 – 7017-2680-0000-5750-9122

White Blood Cell ("WBC") count, abnormally high Mean Platelet Volume ("MPV"), and can cause erratic or abnormal type behaviors and/or even chances in behavior.

I would also like to thank your police department, even though they didn't understand why I was naked due to lack of evidence giving a clear proven explanation for why I was out naked, for arresting me and here is why. Had I not been taken out of my apartment and thrown in jail, I would have still suffered more of the carbon monoxide gas and either would have died or suffered enough brain damage to become mentally retarded. I never would be able to live life outside of a hospital or medical facility again had I remained in carbon monoxide poisoning. Luckily, after I was arrested, my mother [who was my caregiver through the Medicaid medical waiver] was forced to work a regular warehouse job where she wasn't home most of the day, each day. So she wasn't around the carbon monoxide gas 24/7 but still had exposure to such gas in the upper apartment.

The carbon monoxide would explain the weird behavior on September 21, 2018. It doesn't make sense for somebody to be walking out butt naked on a hiking trail at night when wild animals including bears and coyotes were out and can kill an unarmed civilian, especially a naked unarmed civilian. I have type 1 brittle diabetes. I could have died of diabetic low blood sugar which could cause a seizure. I was alone on the hiking trail (*except for what I presumed to be a man wearing a hoodie, he may be real, he may be a hallucination which I had perceived was real*), with brittle Type 1 diabetes, I make statements on federal court record to having blackouts of my memory, stating that I thought I was drugged around the time I met the man wearing the dark hoodie, I was making contradictory statements towards Sgt. R. D. Jones of law enforcement causing him to personally feel that I was some kind of liar, when in reality carbon monoxide poisoning can have you feeling like you're being watched when you're not or having you see things that other people do not see.

I list all proofs in the following Order of Exhibits:

Exhibit 1)    1-Page typed letter statement from chimney expert witness Pete Compton – Explains that on the date of January 30, 2019, he found evidence of carbon monoxide gas exposure in Apartment 2 and Apartment 1 of 310 Forest Street, Martinsville Virginia, and removed the source of the carbon monoxide gas. The source was metal tin blocking the chimney flues, causing the natural gas appliances (*gas water heater and gas boiler/furnace*) to exhaust gas into both apartments rather than up the chimney. Causing real damage to the home, and

9590-9402-3527-7275-7497-41 – Pages 2 of 9 – 7017-2680-0000-5750-9122

possibly causing bodily damage and/or brain problems to Brian David Hill and Roberta Hill. **Total of 1-page.**

Exhibit 2)        Two pages of laboratory results from Sovah Hospital Martinsville medical records from November 19, 2017. One page of ECG reading showing evidence of Sinus Tachycardia ("HILL, BRIAN ID: 000370912 19-Nov-2017 10:06:44 Memorial Hospital of Martinsville"). The other page was Lab Data Results ("MM00370912 MM7805836274 SOVAH Health - Martinsville", "Lab Data Results - Page 1/3  Job 12468 (07/02/2019 14:03) - Page 28 Doc# 9"). Showed abnormally high WBC and MPV levels, as well as abnormal high blood pulse of 105 Beats Per Minute. Usually heart rate goes up when your out jogging, but Brian wasn't jogging because Brian fell and hit his head on the desk in his office after he fell unconscious. Then Brian was able to get up while unconscious, with blood dripping down from his head with an open wound, blood dripped all over the floor and blood was all over his bedroom pillow. Brian's mother found him in his bed, with blood on the pillow with low blood sugar and had called 911. Brian took 4 hours to complete his Obsessive Compulsive Disorder ("OCD") hand washing routine and body washing routine before he was able to get to the Emergency Room at the hospital. The hospital prematurely released him that day without informing Brian of the laboratory results and without informing Brian of the Sinus Tachycardia. Doctor was not informed either, so the abnormal readings were sitting in the medical records until June, 2019. 1-page discharge instructions also included ("MM00370912 MM7805836274 SOVAH Health – Martinsville", "Discharge Instructions - Scanned - Page 1/3  Job 12468 (07/02/2019 14:03) - Page 13 Doc# 6", "MM00370912 MM7805836274 SOVAH Health – Martinsville", "Discharge Instructions - Scanned - Page 2/3  Job 12468 (07/02/2019 14:03) - Page 14 Doc# 6"). **Note for police:** Sinus Tachycardia type abnormal blood pulse was discovered in the "vital signs", around 9:08AM the blood pulse reading for a resting blood pulse was "118" (page not included to condense different proofs without too many pages, if any police officer would like the entire medical record, they may contact Brian D. Hill or Sovah Hospital of Martinsville, Virginia). **Total of 4-pages.**

Exhibit 3)        5 pages from a "Carbon monoxide poisoning (acute)" research study from the National Institute of Health which is a federal government organization. Mentions symptoms of carbon monoxide (BMJ Clin Evid. 2008; 2008: 2103. Published online 2008 Jul 23. PMCID: PMC2907971. PMID: 19445736). **Total of 5-pages.**

Exhibit 4)        2 page excerpt from "TRANSIENT CARDIAC DYSFUNCTION IN

9590-9402-3527-7275-7497-41 – Pages 3 of 9 – 7017-2680-0000-5750-9122

ACUTE CARBON MONOXIDE POISONING" a medical research study in regards to a victim of carbon monoxide poisoning. **Total of 2-pages.**

Exhibit 5)    4-page "Detection of neutrophil–lymphocyte ratio as a serum marker associated with inflammations by acute carbon monoxide poisoning" backed by 5 research studies including a state hospital (Mustafa Karabacak, Kenan Ahmet Turkdogan, Abuzer Coskun, Orhan Akpinar, Ali Duman, Mucahit Kapci2, Sevki Hakan Eren, Pınar Karabacak). Journal of Acute Disease 2015; 4(4): 305–308. **Total of 4-pages.**

Exhibit 6)    2-page report from the Centers for Disease Control and Prevention ("CDC") titled the "CDC - NIOSH Publications and Products - Controlling Carbon Monoxide Hazard in Aircraft Refueling Operations (84-106)". Relevant to carbon monoxide as it mentions the generalized symptoms of carbon monoxide ("CO") gas poisoning. **Total of 2-pages.**

Exhibit 7)    Three anonymous greeting cards (possibly with an intent to annoy, harass, or intimidate) and one anonymous threatening greeting card from an unknown assailant or assailants who sent the four mailings from Tennessee with no return address. **Total of 20-pages.**

Exhibit 8)    4 Pages of evidence in regards to proof of mental confusion while in Martinsville City Jail. Two envelopes meant to be sent to a Greensboro, NC federal building, was instead sent to the Greensboro federal building in Martinsville, VA, when Martinsville has no federal buildings. The other mailing was sent to the city farm instead of "55 West Church Street". All three mailings were returned to sender because the addresses didn't make any sense. **Total of 4-pages.**

Exhibit 9)    6 pages from Piedmont Community Services, a month after Brian David Hill was jailed in Martinsville City Jail for the charge of indecent exposure, Brian was diagnosed by forensic psychiatrist Dr. Conrad Daum as to having exhibited psychosis and delusions. Psychosis (as shown in Exhibit 3), is a symptom of carbon monoxide gas poisoning. **Total of 6-pages.**

Exhibit 10)    Proof of medical neglect from Sovah Hospital in Martinsville (formerly Martinsville Memorial Hospital). They drawn blood and was going to do a "blood count" test which would have again possibly shown an abnormally high White Blood Cell count and high MPV levels, had the test been conducted. Instead the blood was wasted and the ordered tests were to be deleted from the

chart. Then the hospital released patient Brian David Hill way too early to the custody of Martinsville Police, leading to the wrongful imprisonment of Brian David Hill and led to the carbon monoxide levels never being found out. 7 pages of Hospital record, dated September 21, 2018 (MRN: MM00370912, Account#: MM7806761243). **Note for police:** Sinus Tachycardia ("MM00370912 MM7806761243  SOVAH Health - Martinsville", "ED Physician Record - Electronic - Page 2/4  Job 23328 (05/17/2019 13:34)- Page 5 Doc# 2") type abnormal blood pulse was discovered in the "vital signs" The first blood pulse reading around 4:09AM was "119" for a resting pulse, then around 5:01AM the last resting blood pulse reading was "106". Any blood pulses above 100 beats per minute is "sinus tachycardia". Sinus Tachycarda means that there is a medical problem in the body, and doesn't necessarily mean a heart problem but can increase the risk of a heart attack or stroke. I was released to Martinsville City Jail while medical records admitted that I had sinus tachycardia before I was arrested after being transported to the Hospital after police handcuffed me. **Total of 7-pages.**

Total of 55 pages for all Exhibits. The Exhibit with the most pages is the greeting cards evidence because the writer of those greeting cards who threatened to commit a "controlled action" against Brian D. Hill's mother Roberta Hill sounds like some kind of religious psychopath who wants Roberta to stop the YouTube videos and books. A threat is a threat and threatening to do something to somebody to stop their freedom of speech is against the law.

It should also be noted that evidence had been mailed to the Martinsville Circuit Court in regards to both federal court affidavits (declarations) in regards to the story about the man wearing the hoodie and carbon monoxide poisoning.

Document Seq. 4, 01/23/2019, MOTION TO ADMIT EVIDENCE

Document Seq. 7, 04/08/2019, MOTION TO FILE EVIDENCE BEFORE TRIAL

Document #153 in case no. 1:13-cr-435-1, Middle District of North Carolina, contained statements of Brian David Hill in 2018 having memories blacked out, feeling of being drugged, feeling afraid to sleep in his bed but yet kept his doors unlocked as if needing to escape the house out of fear that something wasn't right. If you have access to a copy of this federal filing which should have been filed with the Circuit Court earlier this year, you will notice that the hand writing was very sloppy compared to other pro se filings.

9590-9402-3527-7275-7497-41 -- Pages 5 of 9 -- 7017-2680-0000-5750-9122

The truth must be brought out to your Police Department before it is too late. It is morally and ethically wrong to force a trial by jury for a charge of indecent exposure when there is enough cumulative evidence showing different symptoms of CO gas poisoning, evidence of CO residue in and around the chimney of 310 Forest Street Apartments found by material expert witness Pete Compton. This is enough evidence for any reasonable juror to want to throw the charge out.

Your police department isn't at fault for the medical neglect, but that it was Sovah Hospital in Martinsville, Virginia, that discharged me to police custody way too early and caused me to appear to look like a liar, I misunderstood as I didn't understand that I had carbon monoxide poisoning with sinus tachycardia, so I had wrongfully cussed out Sgt. R. D. Jones on September 21, 2018. I am sorry about that, the Hospital staff were the ones in the wrong for releasing me when they saw that I had a blood pulse rate of over 100 which is sinus tachycardia but released me to jail without further testing, and the hospital's failure on November 19, 2017, is the sole cause for what led up to my indecent exposure behavior because they knew that I had exhibited 3 different problems (abnormal WBC, abnormal MPV, Sinus Tachycardia, didn't even let my Medical Doctor know) and failed or refused to keep me confined to the hospital bed until further lab tests were done to determine as to why I had abnormal blood cell counts and Sinus Tachycardia which can all be caused together by carbon monoxide gas poisoning exposure.

On September 21, 2018, the hospital was going to order different lab results after blood was drawn, but they refused the responsibility of conducting the lab work for the blood drawn into vials, and forced the Police Department to have the burden of testing me for possible drugs, alcohol, and abnormal blood cell count. The Police Department has no laboratory results from what I understand when I had asked my former attorney Scott Albrecht to find the laboratory results, so the hospital failed and refused (by their excuses) to do a thorough lab-work and examination to determine medical-wise as to why I was found butt naked on the Dick and Willie hiking trail during the night and had sinus tachycardia level readings.

I do not blame anybody in Martinsville Police Department for refusing to hear my story or misunderstood and thought I was a liar due to me making contradictory statements while I was interviewed as to why I was butt naked on the Dick and Willie hiking trail on September 21, 2018. I do not blame your Police Department for assuming that I was lying and didn't want to believe my story, because I myself did not know that I was under carbon monoxide poisoning. I said the F-word out of frustration to Sgt. R. D. Jones for not believing my story, not understanding why exactly I was sounding contradictory. Now that I know it was carbon monoxide poisoning, it explains my

behavior and a lot of things.

As far as all your officers were aware, I was dazed and/or confused while naked, I had cuts and abrasions all over my body, I had sinus tachycardia with a resting blood pulse reading of "119" on the day that I was jailed, I was prematurely released from the hospital without conducting the proper laboratory work to determine why I was butt naked on a hiking trail at night, and making contradictory statements because I had mental confusion. The man in the hoodie may have been a hallucination, it may not be, but the fact that I was making confusing statements to Sgt. R. D. Jones and then cussing him out when I haven't ever cussed out law enforcement before, shows behavioral abnormality. When I was given the mental evaluation ordered by the General District Court in November, 2018, the carbon monoxide would have been out of my body/system around that time, so the psychologist that evaluated me would never have seen any of the symptoms of carbon monoxide unlike the diagnosis of "psychosis" by Dr. Daum of Piedmont Community Services, as he had evaluated me and diagnosed me with "psychosis" closer to the time that I was arrested. So for the psychologist in November to say that I was competent to stand trial and was competent at the time of the offense, did not take any of the issues I had raised into account. Therefore that mental evaluation of November 2018 is no longer valid and a new evaluation should be conducted by the Circuit Court if the Commonwealth Attorney wishes to continue the jury trial. That 2018 evaluation had not known about the sinus tachycardia, and all other cumulative evidence which altogether paints a pretty convincing picture of carbon monoxide poisoning, did not know about the mental confusion where three letters were sent to the wrong addresses and were returned to sender before Brian David Hill was given a diagnosis of "psychosis" and delusions.

These are the carbon monoxide symptoms I had exhibited while I had been exposed to Carbon Monoxide gas in my apartment: (1) Sinus Tachycardia; (2) abnormally high White Blood Cell count; (3) abnormally high Mean Platelet Volume level; (4) abnormal high heart rate of 105 Beats Per Minute for a resting heart pulse rate; (5) Psychosis; (6) possible hallucinations; (7) mental confusion; (8) impulsive or inappropriate behavior (personality changes) which was not normally exhibited; and (9) loss of consciousness on November 19, 2017. I also remember that there were times when I may have had "Urinary incontinence" because when I was coughing or sneezing some urine went into my underwear even though at the time I did not have to run to the bathroom. I never thought that was also another symptom of CO gas poisoning, I assumed that it was high blood sugar. Exhibit 3 mentions "incontinence".

Also note to Police: Witness Stella Forinash and Kenneth Forinash had witnessed my mother Roberta Hill's head was shaking a lot, which looks like she had Parkinson's

disease. So my mother had exhibited the symptom of "Parkinsonism" as documented in Exhibit 3.

So I have up to at least 8 or more symptoms of carbon monoxide, and that doesn't include the testimony from Pete Compton. He is willing to be questioned by your Police Department and Commonwealth Attorney in regards to my home being exposed to possibly up to dangerous amounts of CO gas. When exposure is for many months, it can deteriorate someones health and mental state.

The attached evidence and explanation in this letter shall be more evident, clear, and believable compared to my September 21, 2018 statements about a man wearing a hoodie. There may still be a man wearing a dark hoodie, as Exhibit 7 showed that my mother had received a threatening greeting card where a "controlled action" would be conducted against her if she had not cease her writings and YouTube videos. Whatever the case may be, there is more to the story, and I didn't even know on September 21, 2018, that I was under carbon monoxide poisoning. My apologies to officer R. D. Jones.

Had I known about the carbon monoxide poisoning in November 2017 when I had abnormal lab results, I would have taken steps to evacuate my home until the Henry County Fire Marshal and inspectors and the Fire Department would have been notified, investigated the carbon monoxide, and would have rid the home of the poison/toxin before I would move back into my apartment. That would have prevented me from engaging in the act of being naked on the Dick and Willie hiking trail on September 21, 2018, and thus the charge of indecent exposure never would have been filed against me. The hospital of Sovah Hospital in Martinsville is to blame for not preventing what led up to my abnormal behavior on September 21, 2018, for failing and refusing to thoroughly conduct further laboratory tests which would have led to the discovery of carbon monoxide levels in my body. Because the hospital failed to investigate why I had dangerously high white blood cell count in November 2017 after my severe fall in November (*could have been cancer, an infection, etc etc*) and Sinus Tachycardia, they failed to find the levels of carbon monoxide and thus put me wrongfully under criminal liability of indecent exposure on September 21, 2018. Sovah Hospital is responsible for all of my suffering that was caused by me being under carbon monoxide poisoning. I shouldn't be imprisoned as a result of this wrongful charge of indecent exposure which would be an insult to justice.

Therefore I present this evidence, all attached evidence, to your Police Department pursuant to the criminal investigation and charge of indecent exposure on September 21, 2018. This evidence will also be forwarded to the L. Richardson Preyer Federal Building and United States Courthouse to file as evidence pertinent to the

9590-9402-3527-7275-7497-41 — Pages 8 of 9 — 7017-2680-0000-5750-9122

Supervised Release Violation charge, and may also be filed as evidence in the Circuit Court in a new pro se motion to Admit Evidence for the Jury Trial.

I am sorry I didn't notify you about this issue earlier, but I wanted to gather as much proof as humanly possible before mailing it all to you. I am retaining a copy of this evidence for the record and will be filed with the Federal Court as well. I hope that you can reopen the investigation into the indecent exposure and place this evidence in your investigative file for that case.

Thank You, God Bless America

Signed, *Brian D. Hill*
Signed

Brian D. Hill
Former U.S.W.G.O. Alternative News reporter
Phone #: 276-790-3505
Mailing Address: 310 Forest Street, Apartment 1, Martinsville, Virginia 24112



QANON – DRAIN THE SWAMP
Amazon: The Frame Up of Journalist Brian D. Hill
Stanley's 2255 blog: JusticeForUSWGO.wordpress.com
Brian D. Hill asks President Donald John Trump and QANON for help

– Exhibits Attached Hereto –

9590-9402-3527-7275-7497-41   Pages 9 of 9   7017-2680-0000-5750-9122

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ATTN: Chief G. E. Cassady
Martinsville Police Department
55 West Church St.
Martinsville, VA 24112

9590 9402 3527 7275 7497 41

2. Article Number (Transfer from service label)

7017 2680 0000 5750 9122

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
  ☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☑ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                    Domestic Return Receipt





ATTN: Chief G. E. Cassady
Martinsville Police Department
55 West Church St.
Martinsville, VA 24112

```
                              MARTINSVILLE
                              1123 SPRUCE ST
                        MARTINSVILLE, VA 24112-9998
                              515652 0362
                              (800)275-8777
                           07/19/2019 09:12 AM


Product                        Qty    Unit      Price
                                      Price

PM 1-Day                        1     $7.35     $7.35
  (Domestic)
  (MARTINSVILLE, VA 24112)
  (Weight:0 Lb 13.30 Oz)
  (Expected Delivery Day)
  (Saturday 07/20/2019)
Return Receipt                                  $2.80
  (USPS Return Receipt #)
  (9590940235272757497410)
Cert Mail Rst/Del                               $8.80
  (Recipient name)
  (G E CASSADY)
  (USPS Certified Mail #)
  (70172660000575091221)

Total                                          $18.95


Cash                                           $20.00
Change                                         ($1.05)


Includes up to $50 insurance

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit www.usps.com
USPS Tracking or call 1-800-222-1811

Save this receipt as evidence of
insurance. For information on filing
an insurance claim go to
https://www.usps.com/help/claims.htm

              Preview your Mail
             Track your Packages
              Sign up for FREE @
            www.informeddelivery.com

All sales final on stamps and postage
Refunds for guaranteed services only
        Thank you for your business

        HELP US SERVE YOU BETTER

      TELL US ABOUT YOUR RECENT
           POSTAL EXPERIENCE

                Go to:
     https://postalexperience.com/Pos

      840-5250-0004-003-00041 12438-02

           or scan this code with
             your mobile device
```

MARTINSVILLE CIRCUIT COU
55 W CHURCH ST
MARTINSVILLE, VA. 24112-
276-403-5106

## SALE

REF#: 00000002

Batch #: 078
03/16/20                         12:42:39
APPR CODE: 006892
Trace: 2
MASTERCARD                 Chip/Swiped
************0127                   **/**

## AMOUNT        $99.84

### APPROVED

THANK YOU

CUSTOMER COPY